**Case No. 2023-1093, 2023-1141**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

VANDEWATER INTERNATIONAL INC.,

*Plaintiff*,

SIGMA CORPORATION, SMITH-COOPER INTERNATIONAL, INC.,

*Plaintiffs-Appellants*,

v.

UNITED STATES,

*Defendant-Appellee*,

ISLAND INDUSTRIES,

*Defendant*.

---

On Appeal from the United States Court of International Trade
Case No. 1:18-cv-00199, Hon. Leo M. Gordon, Judge

---

### <u>PLAINTIFF-APPELLANT'S REVISED REPLY BRIEF</u>

Gregory S. McCue
Zachary Simmons
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6421

*Counsel for Smith-Cooper
International, Inc.*

Dated: July 12, 2023

FORM 9. Certificate of Interest                                    Form 9 (p. 1)
                                                                    July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-1093, -1141 |
| **Short Case Caption** | Vandewater International Inc. v. US |
| **Filing Party/Entity** | Smith-Cooper International, Inc. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/12/2023                 Signature:  /s/ Gregory S. McCue

                                 Name:       Gregory S. McCue

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Smith-Cooper International, Inc. | | ASC Engineered Solutions |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| Carbon Steel But-Weld Pipe Fittings from Peoples Republic of China; SCO - Vandewater | A-570-814 | Department of Commerce |
|---|---|---|
| Smith-Cooper International, Inc, | 19-00011 | Court of International Trade |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ................................................................ 1

II.   ARGUMENT ................................................................................... 4

    A.    All Materials Cited In SCI's Opening Brief Were On The Record ...................... 4

    B.    The Government Fails To Overcome SCI's Demonstration That Multiple Unambiguous Terms In The Scope Exclude Welded Outlets ............................... 5

        1.    The Government's Procedural Arguments On Unambiguous Terms Should Be Rejected ........................................................................... 6

        2.    "Butt-Weld" Is Unambiguous And Excludes Welded Outlets From The Scope ....................................................................................... 9

    C.    The Government Fails To Overcome SCI's Demonstration That The (k)(1) Sources Exclude Welded Outlets ...................................................... 14

        1.    The Government's Procedural Arguments On SCI's Claims Concerning The (k)(1) Sources Should Be Rejected ............................... 14

        2.    The Government Fails To Rebut SCI's Demonstration That The (k)(1) Sources Exclude Welded Outlets ........................................ 17

    D.    SCI Did Not Forfeit Its Arguments On Suspension of Liquidation, Nor Are These Arguments Moot ................................................................. 28

III.  CONCLUSION AND STATEMENT OF RELIEF REQUESTED ................................ 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*King Supply Co., LLC v. United States*,
  674 F.3d 1343 (Fed. Cir. 2012)......................................................27

*OMG, Inc. v. United States*,
  321 F. Supp. 3d 1262 (Ct. Int'l Trade May 29, 2018) .............................7

*Simpson Strong-Tie v. United States*,
  335 F. Supp. 3d 1311 (Ct. Int'l Trade Sept. 21, 2018) ...........................7

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006)......................................................30

**Regulations**

19 C.F.R. § 351.225(k)(1)...........................................................1, 31

19 C.F.R. § 351.225(k)(2)...............................................................1

**Administrative Determinations**

<u>Carbon Steel Butt-Weld Pipe Fittings from Brazil, China, Japan, Taiwan, and
  Thailand, Investigation Nos. 731-TA-308-310, 520, 521 (Second Review),</u>
  USITC Pub. 3809 (Oct. 2005) ........................................................26

*Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of
  China*, 57 Fed. Reg. 29,702 (Dep't of Commerce July 6, 1992) ................... *passim*

Final Scope Ruling On Request by Sprink, Inc. to Exclude Sprink-let Carbon
  Steel Butt Weld Pipe Fittings from the Antidumping Duty Order on Carbon
  Steel Butt-Weld Pipe Fittings from Taiwan (March 25, 1992) (Sprink scope
  ruling)................................................................................ *passim*

Forged Steel Fittings from China, Italy, and Taiwan: Final Scope Determination
  Decision Memorandum (July 23, 2018) (Forged Steel Fittings scope ruling). ............... *passim*

## I.    SUMMARY OF ARGUMENT

On behalf of Smith Cooper International, Inc. ("SCI"), this reply addresses the arguments by defendant-appellee ("Government") in its response brief (Docket No. 25).  Following the proceedings below before the U.S. Department of Commerce ("Commerce") and the U.S. Court of International Trade ("CIT"), the issues fall into three overarching questions, in the alternative:

1. Does the language of the antidumping duty order on butt-weld pipe fittings ("BWPFs") from China include unambiguous terms that exclude welded outlets from the scope?  *See Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China*, 57 Fed. Reg. 29,702 (Dep't of Commerce July 6, 1992) ("AD Order").

2. If the language of the scope does not resolve the issue, do the enumerated sources of 19 C.F.R. § 351.225(k)(1) ("(k)(1) sources"), confirm that welded outlets are excluded from the scope?

3. If the Court affirms the remand redetermination pursuant to 19 C.F.R. § 351.225(k)(2), is Commerce limited to the imposition of suspension of liquidation on unliquidated entries that entered the United States on or after the date of initiation of the remand proceeding (October 30, 2020)?  *See* **Appx21-124** ("Final (k)(2) Remand Redetermination").

As detailed below, the answer to each of the above questions is **"yes."**

Welded outlets are excluded from the AD Order's scope by multiple unambiguous terms. Because welded outlets are <u>not</u> "butt-weld"; <u>not</u> "formed" or "forged; <u>not</u> "used to join sections in piping systems where conditions require permanent, welded connections," and <u>include</u> "threaded" or "grooved" fastening methods, they are not subject BWPFs. Commerce's scope ruling in the Vandewater International Inc. ("Vandewater") proceeding failed to address these unambiguous scope terms. In the CIT's cursory analysis of this question, it relied on faulty reasoning to find that just one of the above scope terms, "butt-weld," was not unambiguous, and failed to address the other unambiguous terms raised. **Appx143-148** ("(k)(0) opinion"). The Government now attempts a collection of arguments to support the CIT's thin (k)(0) opinion, all of which fail. *See* **Sections II.A. and II.B.**.

The (k)(1) sources exclude welded outlets from the scope. In particular, the Petition and determinations of the U.S. International Trade Commission ("ITC") include physical requirements of subject BWPFs, none of which welded outlets meet. These sources also identify specific industry standards applicable to subject BWPFs, which welded outlets do not meet. And, in the *Forged Steel Fittings* scope ruling, Commerce determined that "butt weld" requires that a product be "butt welded at both end connections," however welded outlets never have <u>any</u> butt welded end connections. **Appx590-601**. In its (k)(1) scope ruling (**Appx131-142**),

Commerce ignored much of this evidence, instead determining that the presence of a single beveled edge for any type of welding makes that product subject, despite the consistent evidence of industry standards for the term butt-weld.  In its review of Commerce's (k)(1) scope ruling (**Appx125-130**), the CIT similarly erred by ignoring the record evidence and instead relying on a two-decade-old Commerce scope ruling (*Sprink*), which Commerce itself had rejected.  The Government now attempts to support the CIT's flawed analyses of the (k)(1) sources through a number of arguments that all fail.  *See* **Sections II.A. and II.C.**.

Finally, should this Court affirm the CIT's opinion (**Appx1-20**) sustaining Commerce's Final (k)(2) Remand Redetermination (**Appx21-124**), it should confirm that Commerce lacks authority to suspend entries made prior to its determination.  The CIT erroneously held that SCI's arguments on this issue had "evolved significantly" over the course of the proceeding and were thus waived.  This was despite the fact that SCI had consistently argued, before both Commerce and the CIT, that Commerce was limited by its regulations and relevant judicial precedent to the imposition of duties on shipments that entered the United States on or after the date of initiation of the remand proceeding (October 30, 2020).  **Appx19**.  The Government now attempts to defend the CIT's unlawful holding by mischaracterizing SCI's arguments below and ignoring the relevant history before Commerce and the CIT.  *See* **Section II.D.**.  Because SCI did not waive its claims

3

concerning Commerce's liquidation authority, this Court should rule that Commerce may not impose duties on entries made prior to October 30, 2020 pursuant to its Final (k)(2) Remand Redetermination. In the alternative, the issue should be remanded to the CIT.

## II.    ARGUMENT

### A.    All Materials Cited In SCI's Opening Brief Were On The Record

The Government asserts that SCI cited a "significant volume of non-record material from {its} stayed case{} in connection with {its} (k)(0) claims" and that SCI's (k)(1) claims also rely on evidence that was not on the administrative record before Commerce. Government Brief at 25-26. The Government asserts that the Court should "disregard these materials." Government Brief at 28. The Government is incorrect and this Court should reject the Government's claims.

In nearly fifty pages of argument, the Government makes <u>one</u> reference to materials cited by SCI in its (k)(0) claims (at 4-8 and 18-19 of its Opening Brief, Docket No. 15) that allegedly were not on the record of the Vandewater proceeding before Commerce. Government Brief at 43. These materials include just <u>one</u> document, SCI's Scope Ruling Request (**Appx3728-3987**).

First, SCI's Scope Ruling Request <u>was</u> on the record of the Vandewater proceeding, attached as an exhibit to SCI's November 19, 2020 comments on Commerce's (k)(2) remand proceeding (Remand Record P.D. 9 at Exhibit 6),

4

which was cited by Commerce in its Final (k)(2) Remand Redetermination (**Appx21-124**).  The images from SCI's Scope Ruling Request that were reproduced in its Opening Brief to the Court were, moreover, similar to those provided by, and used for the same purposes as, Vandewater in its own scope ruling request.  *See, e.g.*, **Appx170-172**, **Appx179-180**.

Second, because the CIT heard Vandewater's, SCI's, and SIGMA's (k)(0) claims together, and issued a single decision, it would be appropriate for SCI to reference record materials from its own case for its (k)(0) claims.  These materials were all before the CIT as part of its single opinion on (k)(0) issues in all three cases, which now is on appeal before this Court.  *See* SCI Opening Brief at 8-9; CIT (k)(0) Opinion, citing SCI's Scope Ruling Request (**Appx144-145**).

### B.    The Government Fails To Overcome SCI's Demonstration That Multiple Unambiguous Terms In The Scope Exclude Welded Outlets

In its Opening Brief, SCI demonstrated that welded outlets are excluded from the scope by multiple unambiguous terms.  SCI Opening Brief at 16-27. SCI's analyzed "butt-weld," but also listed other unambiguous terms: (1) "formed" or "forged"; (2) "threaded" or "grooved" fastening methods; and (3) "used to join sections in piping systems where conditions require permanent, welded connections."  The meanings of all of these unambiguous terms consistently point to exclusion of welded outlets from the scope.

5

The CIT simultaneously reviewed arguments from Vandewater, SCI, and SIGMA related to unambiguous terms and issued a single opinion in all three cases. **Appx143-148**. At that point, the specific question before the CIT was whether Commerce had, in its initial Scope Ruling (**Appx131-142**), committed legal error by ignoring the plain, unambiguous terms in favor of the enumerated (k)(1) sources. In its less-than-a-page analysis, the CIT failed to meaningfully consider the evidence before it, instead relying primarily a single Commerce scope ruling from 1992, under a different AD order, with different scope language which, moreover, Commerce had explicitly rejected in its interpretation. The CIT incorrectly found that the term "butt-weld" is not unambiguous and it failed to address the other terms of the scope language. **Appx147**.

The Government's attempts to defend the CIT's unsupportable (k)(0) opinion (Government Brief at 28-50) all fail for the reasons that follow.

### 1.    The Government's Procedural Arguments On Unambiguous Terms Should Be Rejected

In its arguments concerning the scope language, the Government raises procedural claims which should be rejected by this Court.

First, the Government claims that SCI's argument that "{t}he CIT's (k)(0) ruling ignored substantial evidence presented before Commerce and the CIT … concerning … objective dictionary definitions of the term 'butt-weld'" is "insufficient to preserve any related issue for review." SCI Opening Brief at 18;

Government Brief at 43.  SCI properly raised this issue because it is relevant to the review of the CIT's (k)(0) analysis that the CIT ignored significant record evidence related to dictionary definitions of the term "butt-weld."  Because prior cases before the CIT have relied on dictionary definitions to determine that certain scope terms are unambiguous, it is relevant to this Court that the CIT failed to address dictionary definitions of the scope term – "butt-weld" – which were presented.  *See OMG, Inc. v. United States*, 321 F. Supp. 3d 1262, 1268 (Ct. Int'l Trade May 29, 2018); *see also Simpson Strong-Tie v. United States*, 335 F. Supp. 3d 1311, 1318 (Ct. Int'l Trade Sept. 21, 2018).

Second, the Government asserts that "SCI ma{de} a set of arguments that Vandewater *declined* to make – either before Commerce or in its (k)(0) briefing" and that "{b}ecause these arguments have not been raised on the record of this case, they are both unexhausted and waived for this appeal."  Government Brief at 48.  Such arguments, provided at pages 24 to 27 of SCI's Opening Brief, explain the unambiguous meanings of other scope terms (beyond "butt-weld") and how each of these terms clearly exclude welded outlets from the scope.  SCI Opening Brief at 24-27.

The Government's claim concerning SCI's arguments on these other scope terms should be rejected.  As explained in SCI's Opening Brief, the CIT denied Vandewater's, SCI's, and SIGMA's motions for case consolidation and instead

reviewed each plaintiff's (k)(0) claims in parallel, resulting in the issuance of a unitary opinion covering all (k)(0) claims across all three cases.  SCI Opening Brief at 8-9.  That (k)(0) opinion is now on review by this Court.  **Appx143-148**. Because SCI's arguments on the unambiguous meanings of other scope terms were before the CIT and informed its (k)(0) opinion, and have been fully briefed in the instant appeal, those arguments are not waived.  CIT 19-00011 ECF No. 49 at 7-10; SCI Opening Brief at 24-27.  However, should this Court find that these arguments are not properly before it, SCI respectfully submits that this Court should indicate that such arguments are preserved in SCI's own case, still stayed at the CIT.

Finally, the Government asserts that SCI's arguments concerning Commerce's prior *Sprink* scope ruling are "based on documents from SCI's separate record" and that because "SCI *did not* contest the ruling's relevance before the trial court" they are waived.  Government Brief at 45.  There are several issues with these arguments.  First, it is unquestionably the case that both Commerce, in its (k)(1) Scope Ruling on Vandewater's welded outlets (**Appx141**), and the CIT, in its (k)(0) opinion, cited *Sprink*.  Thus, *Sprink* is relevant to the underlying administrative and judicial decisions that are now before this Court. Second, although a subset of SCI's arguments, concerning certain deficiencies of *Sprink* and also differences between the AD Order and Taiwan BWPF Order at

8

issue in *Sprink*, were before Commerce in the SCI proceeding, those arguments

constituted part of the record before the CIT in connection with its (k)(0) opinion,

and are thus integral to this appeal.  **Appx3755-3761**.  As explained above, the CIT

issued <u>one</u> (k)(0) opinion based on the records of all three administrative records,

and the evidence from all of those records is thus germane to the CIT's decision.

Below, in **Section II.B.2.ii.**, SCI addresses the Government's additional arguments

on *Sprink*.

### 2.    "Butt-Weld" Is Unambiguous And Excludes Welded Outlets From The Scope

Before the CIT, Vandewater, SCI, and SIGMA presented, simultaneously,

substantial record evidence concerning the unambiguous term "butt-weld".  Such

evidence included:  (1) the well-defined and consistently used term "butt-weld"

within industry; (2) the different industry standards applicable to welded outlets on

the one hand, and "butt-weld" pipe fittings on the other; and (3) objective

dictionary definitions of the term "butt-weld."  CIT 18-00199 ECF No. 58; CIT 19-

00003 ECF No. 49; CIT 19-00011 ECF No. 49.  *See also* SIGMA Reply Brief.

Docket No. 28.

As explained above, rather than analyze any of that evidence, the CIT relied,

unreasonably, on just two items:  (1) petitioner Island's unsupported assertions

regarding SCI's alleged trade usage of the term "butt-weld"; and (2) Commerce's

1992 *Sprink* scope ruling.  The Government now defends the CIT's reliance on

these items, but as set forth below, the CIT's findings are unsupportable and should be overturned.  Government Brief at 44-48.

### a.    SCI's Usage

In its (k)(0) opinion, the CIT impermissibly relied on unsupported assertions regarding SCI's alleged trade usage of the term "butt-weld" to find that there is "{not} a well-known, uniform 'trade usage' of the term 'butt-weld fitting' that excludes {the} Plaintiffs' merchandise from the Order."  **Appx147**.  The CIT did so by pointing to unsupported assertions made by Island in the proceeding below before Commerce, despite the fact that neither Commerce (in its (k)(1) Scope Ruling) nor the Government (in its subsequent (k)(0) briefs to the CIT) relied on these unsupported assertions.  And, in so doing, the CIT ignored SCI's explanation to Commerce that any mention of "butt-weld" products in a limited number of import documents was the result of limited human error, and *not* reflective of the consistent and uniform understanding of the term "butt-weld" (in the company or generally).  **Appx571**.

The Government asserts that "Island's representation and SCI's admission are on the records of all three proceedings," and then cites to the initial Vandewater scope ruling record and the subsequent (k)(2) remand record.  Government Brief at 44.  There are multiple failures in the Government's assertion.

First, the record documents cited from the initial Vandewater scope proceeding are those that contain Island's unsupported assertions regarding SCI's alleged use of the term "butt-weld" and SCI's explanation that such usage was the result of limited human error. *Id.*, citing **Appx456**, **Appx571**. Because these documents include unsupported assertions of SCI's mistaken use of the term "butt-weld" and also SCI's explanations, the CIT erred in relying on the former and never addressing the latter. **Appx147**. There is no reasonable basis for reaching that conclusion based on these record documents, alone or in light of all the contrary record evidence demonstrating the consistent industry definition and use of the term "butt-weld."

Second, the documents cited from the subsequent (k)(2) remand proceeding record were not before the CIT prior to its issuance of the (k)(0) opinion in the court proceeding below and are therefore not relevant to this Court's review of the CIT's (k)(0) opinion. Government Brief at 44, citing **Appx2437**, **Appx3047-3048**. The Government's attempt to rely on such documents, introduced to the (k)(2) remand record at a later point in the proceeding, reflects impermissible post-hoc rationalization. In any event, these documents include explanation by SCI of the temporary, erroneous use of the term "butt-weld" (but notably, never "butt-weld fitting") in certain order documents between December 2017 and April 2018. **Appx3047-3048**. To the extent the Court relies at all on such documents in its

review of the CIT's (k)(0) opinion, which it should not, it must consider SCI's explanation of the human error that resulted in the limited use of "butt-weld" in certain of its import documents, which does not indicate any broader industry usage of "butt-weld" fittings to describe welded outlets.

### b.    *Sprink* Ruling

In its (k)(0) opinion, the CIT relied unreasonably on Commerce's 1992 *Sprink* ruling to hold that the term "butt-weld" in the scope is not unambiguous. **Appx147**.  Based on this, the CIT held that it is "hard for a reasonable mind to be persuaded that branch outlets could never be classified as butt-weld fittings because there is one, and only one, widely- and well-known 'trade usage' of the term 'butt-weld fittings.'" *Id.*  In doing so, the CIT ignored Commerce's explicit determination in the Vandewater ruling that it was "not bound by the agency's analysis in the Sprink Scope Ruling" (**Appx141**).  Moreover, in reaching this decision, the CIT ignored critical evidence and argument before it, demonstrating that (1) *Sprink* was incorrectly decided; (2) because *Sprink* concerned a different order with different scope language, it does not control the interpretation of the AD Order's scope language; and (3) the more recent and more detailed *Forged Steel Fittings* scope ruling (which determined that a "butt-weld" must be "butt welded at both end connections") carries much more weight than the two-decade-old *Sprink* ruling.  SCI Opening Brief at 22-24.

The Government's attempt to defend the CIT's reliance on *Sprink* should be rejected. First, the Government argues that, although Commerce determined in the (k)(1) Scope Ruling that it was "not bound by the … Sprink Scope Ruling," Commerce later "clarified" in its Final (k)(2) Remand Redetermination that the "Sprink ruling addressed a product 'essentially physically identical' to Vandewater's outlets, and that … the Sprink ruling {w}as {thus} 'informative.'" Government Brief at 47 (the Government also refers to *Sprink* as "persuasive authority"). The analysis in the Final (k)(2) Remand Redetermination did not exist before the issuance of the (k)(0) opinion, and is thus not germane to the Court's review of the CIT's (k)(0) opinion.

Second, the Government argues that the more contemporaneous *Forged Steel Fittings* scope ruling, which provides conflicting guidance with *Sprink* on the meaning of a "butt weld," does not control the interpretation of the AD Order because it stems from a different case. Government Brief at 47-48. However, while *Forged Steel Fittings* stems from a different case, so does *Sprink*. Specifically, there a number of differences between the scope language of the Taiwan BWPF Order (at issue in *Sprink*) and the AD Order at issue here. *See* SCI Opening Brief at 22, n. 2. The Court is thus faced with two choices. It can discount the relevance of both *Sprink* and *Forged Steel Fittings* because they stem from separate cases. Or, it can assess the relevance of both *Sprink* and *Forged*

*Steel Fittings*.  Under this latter option, and because it was issued almost

simultaneously with Commerce's (k)(1) Scope Ruling in the below proceeding

(rather than two decades ago), the Court should accord more weight to the

guidance provided under *Forged Steel Fittings*.  For further discussion of *Forged

Steel Fittings*, *see* **Section II.C.2.iii.**

### C.    The Government Fails To Overcome SCI's Demonstration That The (k)(1) Sources Exclude Welded Outlets

In its Opening Brief, SCI demonstrated that the (k)(1) sources – especially,

the Petition and prior ITC determinations and Commerce scope rulings –

definitively exclude welded outlets from the scope.  SCI Opening Brief at 28-43.

The Government attempts to contest SCI's presentation through various procedural

arguments and other assertions.  Government Brief at 50-67.  For the reasons

discussed below, the Government's arguments fail.

### 1.    The Government's Procedural Arguments On SCI's Claims Concerning The (k)(1) Sources Should Be Rejected

In its arguments on the (k)(1) sources, the Government raises procedural

claims, which should be rejected.

First, the Government claims that "SCI depart{ed} from the arguments that

Vandewater made in its (k)(1) trial court briefing," *i.e.*, that the "(k)(1) materials

did not support Commerce's initial ruling, and that the trial court should remand

the matter for (k)(2) analysis."  Government Brief at 50.  Thus, the Government

claims that SCI's (k)(1) arguments are waived and forfeited. *Id.* at 50-51. This ignores the procedural history below, and also misconstrues Vandewater's claims before the CIT.

In particular, before Commerce, Vandewater presented multiple (k)(1) sources demonstrating that welded outlets are not subject to the scope. *See* **Appx183-201**. These included the Petition, ITC investigation determination, and prior Commerce scope rulings. *Id.* In its (k)(1) Scope Ruling, Commerce rejected Vandewater's arguments, determining instead that the (k)(1) sources speak definitively to the inclusion of welded outlets. **Appx131-142**. In its (k)(1) brief to the CIT, Vandewater argued that "Commerce's determination was not reasonable in concluding that (k)(1) sources dispositively pointed to Vandewater's welded steel outlets as covered by the scope of the <u>China Butt-Weld Order</u>" and that "if anything the (k)(1) factors point to a 'dispositive' conclusion that Vandewater's steel branch outlets are <u>outside</u> the scope of the <u>China Butt-Weld Order</u>, which would require the Court to reverse and remand." Vandewater's Motion for Judgment on the Agency Record (June 24, 2020), CIT 18-00199, ECF No. 93 at 6, 29. In its review of Commerce's (k)(1) Scope Ruling, the CIT rejected both Commerce's determination that the (k)(1) sources spoke definitively to the *inclusion* of welded outlets, and Vandewater's argument that the (k)(1) sources

spoke definitively to the *exclusion* of welded outlets, remanding for further analysis under (k)(2). **Appx125-130**.

In its Opening Brief to this Court, SCI agreed with the CIT's rejection of Commerce's reliance on the (k)(1) sources to find that welded outlets are subject to the Order, but disagreed with its finding that the balance of the "(k)(1) sources … do not really tell the court anything about the inclusion of steel branch outlets..." **Appx130**. Rather, as Vandewater has argued since its May 2018 scope ruling request to Commerce, SCI explained that the (k)(1) sources speak definitively to the exclusion of welded outlets from the scope. SCI Opening Brief at 28-43. Based on the above procedural history of this proceeding, SCI's (k)(1) arguments are not waived or forfeited. When this Court makes its *de novo* review of Commerce's (k)(1) Scope Ruling and the CIT's review of that determination, it can and should consider SCI's arguments, which parallel and support those made by Vandewater.

Second, the Government's argument that SCI "seeks to circumvent Commerce's and the trial court's further analyses of the {(k)(1)} materials" is completely unfounded. Government Brief at 51. The Commerce remand redetermination which the CIT ultimately sustained was conducted based on an analysis of the (k)(2) sources, not the (k)(1) sources. SCI is asking that this Court review Commerce's (k)(1) Scope Ruling (**Appx131-142**), examine the CIT's

16

review of that determination (**Appx125-130**), and find that both Commerce and the CIT were incorrect because the (k)(1) sources speak definitively to welded outlets' exclusion from the scope.  This is necessary because analysis under (k)(2) is only necessary if the (k)(1) sources do not speak definitively to the coverage of the product.  Accordingly, there is nothing about SCI's request to this Court that reflects an intent to circumvent the proceedings either at Commerce or the CIT.

### 2. The Government Fails To Rebut SCI's Demonstration That The (k)(1) Sources Exclude Welded Outlets

#### a. The Petition

In its Opening Brief, SCI demonstrated that the Petition underlying the AD Order excludes welded outlets from the scope.  SCI Opening Brief at 29-33.  Specifically, SCI explained that the physical requirements of subject BWPF were identified in the Petition, and that none of these requirements are met by welded outlets.  *Id.* at 29-31.  Such requirements include:  (1) both or all available edges of the fitting are beveled; (2) the fitting is designed to connect to the end of a pipe; and (3) the beveled edge of the fitting is designed to be set against another beveled edge on the connecting pipe, so that the two beveled edges create the type of channel necessary for the butt-weld type of welding.  *Id.* at 29.  In its (k)(1) Scope Ruling, Commerce ignored these requirements, determining that subject BWPFs need only possess one beveled edge, suitable for any variety of welding, and that an end-to-end connection is not required.  **Appx140**.  In its (k)(1) opinion, the CIT

ruled against Commerce's determination, holding that the "petition language, which contemplates beveling on both parts of the assembled pipe, is … not descriptive of the actual physical characteristics of {welded outlets}." **Appx130**. SCI also explained that the "basic shapes" of subject BWPFs identified in the Petition (*i.e.*, elbows, tees, caps, and reducers) do not resemble welded outlets. *Id.* at 31-33. Commerce and the CIT ignored such arguments and evidence when presented by SCI below.

Each of the Government's arguments concerning the Petition language are unavailing. First, the Government's reliance on Commerce's analysis of the Petition in its Final (k)(2) Remand Redetermination is not relevant to SCI's (k)(1) claims before this Court. *See* Government Brief at 53-54. Such analysis was conducted under the (k)(2) sources, not the (k)(1) sources. SCI submits that Commerce, in its (k)(1) Scope Ruling, and the CIT, in its (k)(1) opinion, erred by failing to recognize that the (k)(1) sources definitively exclude welded outlets from the scope of the Order. Commerce's subsequent Final (k)(2) Remand Redetermination is thus irrelevant to the question before the Court, since it came after the reviewable legal and factual errors adopted by Commerce and the CIT. The Court should thus ignore those arguments raised by the Government. In so doing, the Court will observe that the Government has failed in its brief to address

the physical requirements of subject BWPFs contained in the Petition, which welded outlets do not meet.

Second, the Government's arguments regarding the alleged "multiple contrary 'examples of carbon steel butt-weld fittings'" contained in the Petition fail. The Government essentially concedes that the CIT failed to analyze the "basic shapes" of subject BWPFs identified in the Petition by asserting that it is "*presume{d}* … that the fact-finder reviewed all of the evidence presented." Government Brief at 57, emphasis added. In addition, the Government fails to demonstrate that Commerce reasonably analyzed this information in the administrative proceeding below.

Third, the Government relies repeatedly on the existence of an image of a "saddle" in an appendix to the Petition as evidence that the Petition contained "contrary examples" to the basic shapes identified. Government Brief at 54-59. However, as SCI explained in its Opening Brief, such argument represents post-hoc rationalization. Nowhere in Commerce's (k)(1) Scope Ruling did the agency explain the relevance of the saddle image to its determination, and the Government cannot advance such arguments for the first time before the CIT and now this Court. SCI Opening Brief at 32. The Government's assertion that Commerce "referenced the (k)(1) sources and 'descriptions of the merchandise contained in the petition' …" is insufficient to demonstrate that Commerce actually analyzed

19

the saddle image contained in the Petition in its (k)(1) Scope Ruling (it did not). Government Brief at 58.  In any event, and as SCI demonstrated in its Opening Brief, a saddle, unlike a welded outlet, <u>has</u> one traditional butt-weld end, for butt-weld type welding for end-to-end connection with a pipe, which may explain why it was included in an appendix to the Petition.  SCI Opening Brief at 32-33. Although the Government contends that there is "{no} record evidence that saddles are categorized as subject merchandise exclusively by virtue of featuring a beveled edge on the non-contoured end rather than the contoured header end," there is equally no record evidence demonstrating (nor any reasonable basis to believe) that saddles are subject BWPFs *for any other reason*.  Government Brief at 58-59.

Finally, the Government refers repeatedly to caps as an identified "basic shape" in the Petition to argue that welded outlets are subject to the scope. Government Brief at 54-59.  Though Commerce determined that caps demonstrate that "fittings with only one welded connection are not excluded from the scope of the order," neither Commerce nor the CIT (or the Government in its brief) addressed SCI's point that a cap only has one end – <u>which is a traditional butt-weld</u> connection.  With only one end (a butt-weld end) at all, it would thus be impossible for a cap to meet the Petition requirement of having two butt-weld ends.  SCI Opening Brief at 33.  Thus, unlike caps (and saddles), which <u>have</u> a butt weld end, welded outlets' two ends <u>do not have any</u> butt-weld connections.  *Id.*  Accordingly,

the Petition's mention of caps does not demonstrate that welded outlets are subject to the scope.

### b.    The ITC 2016 Sunset Review Determination

In its Opening Brief, SCI demonstrated that the ITC 2016 Sunset Review Determination, a (k)(1) source, excludes welded outlets from the scope.  SCI Opening Brief at 34-36.  Specifically, the 2016 Sunset Review Determination identified several key requirements for subject BWPFs, none of which are present in welded outlets:  (1) the presence of beveled edges (plural); (2) the presence of welded connections (plural); (3) the exclusion of "threaded" or "grooved" ends, which indicate a "different type of fastening method"; and (4) placement against the beveled end of a pipe.  *Id.* at 34.  Though Commerce recognized the pertinent language from the ITC's determination in its (k)(1) Scope Ruling, it unreasonably determined that only a single beveled edge is required for a product to be subject to the AD Order, effectively disregarding the other requirements.  **Appx140**.  This is despite the fact that the single beveled edge of a welded outlet is not beveled for butt welding, and that it cannot be connected to the end of a pipe.  The CIT rightly disagreed with Commerce's determination, holding that the "ITC sunset review … contemplates beveling on both parts of the assembled pipe … {and} is therefore not descriptive of the actual physical characteristics of {welded outlets}."  **Appx130**.  SCI also explained that the 2016 Sunset Review Determination

identified common shapes of subject BWPFs – elbows, tees, reducers, and caps – all of which attach only to the <u>end</u> of a pipe and only with <u>butt-weld connections</u> (unlike welded outlets).  SCI Opening Brief at 35-36.  The ITC mentioned no other kinds of shapes in its determination.  *Id.*

All the Government's arguments regarding the ITC 2016 Sunset Review Determination fail.  First, the Government repeats Commerce's unreasonable position that even though the 2016 Sunset Review Determination requires subject BWPFs to be placed "against the <u>end</u> of a <u>beveled pipe</u>" (emphasis added), subject BWPFs can nonetheless be "attached to a <u>non-beveled</u> opening on the <u>side</u> of the adjoining pipe."  SCI Opening Brief at 34, citing <u>Carbon Steel Butt-Weld Pipe Fittings from Brazil, China, Japan, Taiwan, and Thailand:  Investigation Nos. 731-TA-308-310 and 520-521 (Fourth Review)</u>, USITC Pub. 4628 (Aug. 2016) at 6; Government Brief at 60.  On its face, this position is irreconcilable with the plain language of the ITC's determination.

Second, the Government deflects from the ITC 2016 Sunset Review Determination by asserting that *other* (k)(1) sources "indicate that '{a} pipe fitting possesses the requisite beveled edge if it is capable of creating a shallow channel to accommodate the bead of the weld that fastens the two adjoining pieces…'" Government Brief at 60.  Not only is this argument unrelated to the ITC 2016 Sunset Review Determination, but, as a factual matter, it is also the case that

welded outlets are _not_ capable of creating the type of channel shown in actual examples of butt weld connections. *See* SCI Opening Brief at 4, 7, contrasting images of subject BWPFs with those of welded outlets.

Finally, although the Government is correct that the ITC 2016 Sunset Review Determination notes "further variations within each class of fitting based on differences in the size of one or more of the outlets," this language does not change the nature (butt weld) or placement (end of pipe not middle) of the product identified by the ITC. Government Brief at 61, emphasis added. Rather, as SCI explained in its Opening Brief, such variations are within each type of fitting identified (*e.g.*, the ITC cites "reducing elbows" and "reducing tees"), all of which have at least one connection that requires a traditional, end-to-end butt weld, not other types of welds. SCI Opening Brief at 36.

### c.     Forged Steel Fittings Scope Ruling

In its Opening Brief, SCI demonstrated that Commerce's prior *Forged Steel Fittings* scope ruling, a (k)(1) source, confirms the physical requirements of subject BWPFs discussed in the Petition and relevant ITC determinations, and confirms the exclusion of welded outlets from the scope of the Order. SCI Opening Brief at 37-39. Specifically, in *Forged Steel Fittings*, Commerce provided clarity on the meaning of a "butt weld," which excluded "flanges, butt weld fittings, butt weld outlets, nipples, and all fittings that have a maximum pressure rating of 300 pounds

of pressure/PSI or less" from the scope. **Appx592**. Commerce determined that an outlet "butt welded at <u>both end connections</u>" was a butt-weld fitting and thus appropriately excluded from the investigations on forged steel fittings. **Appx597** (emphasis added). Conversely, outlets with a "socket-weld or threaded end connection, or with <u>only one butt weld end connection</u>, {were} not considered a butt weld fitting and, therefore, {were} not excluded from the scope of the investigations." **Appx597-598** (emphasis added). *Forged Steel Fittings* thus confirmed the requirement that subject BWPFs have two edges for butt welding (not for other welding types), requirements that welded outlets never meet. Both Commerce and the CIT failed to meaningfully address this prior scope ruling in the proceedings below.

The Government's arguments concerning *Forged Steel Fittings* all fail. Government Brief at 61-65. The Government argues that *Forged Steel Fittings* is immaterial to the question of welded outlets' coverage under the AD Order's scope because "{t}he *China BWPFs Order* and *Forged Steel Fittings* orders stem from separate proceedings that cover two distinct classes or kinds of merchandise." *Id.* at 63. While the respective AD orders cover different merchandise, the Government fails to provide a basis or explanation for why it is logical or reasonable for Commerce to define a "butt-weld pipe fitting" (a singular product) differently across these cases. SCI Opening Brief at 39. In the same way the

Government asserts that other Commerce scope rulings under separate orders provide "persuasive authority" to its interpretation here, it is clear that *Forged Steel Fittings* is relevant to Commerce's determination of what constitutes a BWPF. Government Brief at 47.

Moreover, the Government's reliance on the scope clarification memorandum issued by Commerce in the *Forged Steel Fittings* proceeding does not advance its arguments. Government Brief at 64-65; **Appx4071-4072**. Importantly, the scope clarification memorandum *post dates* Commerce's (k)(1) Scope Ruling below, and is therefore not integral to that determination. Any arguments related to the clarification memorandum are thus post-hoc rationalizations. Moreover, the scope clarification memorandum, which addresses products with "at least one, but not all butt welded end connections" and those with "all butt welded end connections," fails to address products with <u>zero</u> butt-welded end connections, such as welded outlets. In fact, the *Forged Steel Fittings* scope ruling and subsequent scope clarification memorandum both confirm that at least some butt-weld connection must be present to constitute a butt-weld fitting (which welded outlets do not have).

### d.    Multiple (k)(1) Sources On Industry Standards

In its Opening Brief, SCI demonstrated that multiple (k)(1) sources exclude welded outlets from the scope of the AD Order based on industry standards. SCI

Opening Brief at 39-43.  Specifically, the Petition identified that subject BWPFs are "manufactured in conformity with industry standards as established by the American Society for Testing and Materials ('ASTM') and the American National Standards Institute ('ANSI')."  **Appx712**.  The particular standards identified by the Petition are ASTM A234-82a for materials and ANSI B16.9 for dimensions. *Id.*  Various determinations of the ITC confirmed that these are the applicable industry standards for subject BWPFs.  SCI Opening Brief at 40-41.  The ITC 2005 Sunset Review, for example, provided that purchasers confirmed that subject merchandise "sources have to manufacture to ANSI B16 standards."  Carbon Steel Butt-Weld Pipe Fittings from Brazil, China, Japan, Taiwan, and Thailand, Investigation Nos. 731-TA-308-310, 520, 521 (Second Review), USITC Pub. 3809 (Oct. 2005) at II-6.  Similarly, the ITC 2016 Sunset Review provided that "all carbon steel BWPF, whether domestic or imported, remained subject to ASTM and ANSI standards."  **Appx639** (emphasis added).  Both Commerce and the CIT failed to meaningfully consider the (k)(1) sources' clear and consistent requirements on applicable industry standards.  SCI Opening Brief at 43.

The Government misconstrues the industry standards applicable to subject BWPFs.  The Government asserts that "SCI overstates the significance of ASTM and ANSI/ASME standards."  Government Brief at 65.  According to the Government, "{t}he *China BWPFs Order* neither includes nor refers to conformity

with industry standards, and the scope language, rather than the petition or an ITC report, controls." *Id.* In making these arguments, the Government omits that the precise purpose of reliance on the (k)(1) sources is that the plain language of the order's scope is ambiguous with respect to product coverage. Here, should this Court determine that the scope language does not definitively exclude welded outlets (as SCI argues it does), then reliance on (k)(1) sources, including cited industry standards, to determine the parameters of the scope, is both lawful and reasonable. This Court's decision in *King Supply* confirms this to be the case. *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1345-1346 (Fed. Cir. 2012).

Additionally, the Government engages in impermissible post-hoc rationalization when it argues that subject BWPFs adhere to industry standards other than ASTM A234-82a for materials and ANSI B16.9 for dimensions. Government Brief at 65-66. Commerce did not rely on such arguments and evidence in its (k)(1) Scope Ruling. Moreover, at least some of the evidence relied on by the Government is rebutted by other record evidence. *Compare* Government Brief at 65-66 ("the ITC investigation report explicitly states that not all BWPF meet ASME standards") and ITC 2016 Sunset Review at 23 ("all carbon steel BWPF, whether domestic or imported, remained subject to ASTM and ANSI standards") (emphasis added).

**D.    SCI Did Not Forfeit Its Arguments On Suspension of Liquidation, Nor Are These Arguments Moot**

In its brief, the Government attempts to obfuscate SCI's consistent legal arguments, raised before both Commerce and the CIT, that suspension of liquidation and imposition of duties under Commerce's Final (k)(2) Remand Redetermination should apply only to entries made on or after October 30, 2020 (the date that Commerce initiated the (k)(2) remand proceeding).  SCI Opening Brief at 43-61.  The Government does this by claiming that SCI's arguments relate exclusively to a factual scenario described as "mixed entries" (*i.e.*, entries containing both welded outlets and merchandise subject to suspension under unrelated AD/CVD orders) which, the Government further asserts, SCI addressed for the first time in post-remand briefing before the CIT.  Government Brief at 67-74.  But, such characterization ignores SCI's arguments raised at both Commerce and the CIT, which addressed Commerce's applicable regulations and were not limited to factual scenarios involving "mixed entries."  Moreover, and contrary to the Government's assertion (Government Brief at 74), Commerce *did* address – and reject – SCI's legal arguments concerning suspension of liquidation in both its Draft (k)(2) Remand Redetermination (**Appx3168**) and Final (k)(2) Remand Redetermination (**Appx123**), which served as the basis for SCI's presentation of such arguments to the CIT in the proceeding below (**Appx4261-4279**).  Because the CIT declined to reach the merits of SCI's legal arguments, instead finding that

28

SCI had waived its arguments, this Court should now overturn the CIT's finding and reach the merits of SCI's arguments (if it affirms Commerce's Final (k)(2) Remand Redetermination).  Alternatively, this Court should remand the issue to the CIT.

SCI's Opening Brief provides a comprehensive overview of SCI's arguments regarding the suspension of liquidation for entries under Commerce's (k)(2) remand proceeding – which the Government does not contest.  *See* SCI Opening Brief at 43-58.  Accordingly, it is clear that SCI did not forfeit its arguments concerning suspension of liquidation.  The question of "mixed entries" is a renamed <u>subset</u> of SCI's arguments, which covered the treatment of <u>all</u> entries made before and after October 30, 2020.  It is inaccurate to characterize SCI's arguments as addressing only "mixed entries."  And, it was a gross abuse of discretion for the CIT to use factual information provided by SCI in response to questions the <u>CIT itself</u> raised as a basis for finding that SCI's "arguments … evolved significantly" and were therefore forfeited.  **Appx19**.  In addition, the cases cited by the Government in support of the CIT's forfeiture finding are inapposite – SCI's arguments, spanning dozens of pages before both Commerce and the CIT, were clearly more than "skeletal or underdeveloped" and went far beyond passing reference in a footnote.  Government Brief at 71, citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir 2009) and *SmithKline*

*Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).  For these

reasons, this Court should now overturn the CIT's forfeiture finding and reach the

merits of SCI's arguments.  In doing so, the Court should rule that Commerce's

regulations only permit the agency to "continue" suspension for pre-initiation

entries where such suspension related specifically to the "product in question"

(here, welded outlets).  This is a pure question of law, and one that this Court may

reach here.

Additionally, the Court should reject the Government's argument that SCI's

arguments concerning suspension of liquidation are moot.  Government Brief at

72-73.  SCI recognizes that Commerce's (k)(2) remand proceeding concerned

Vandewater's entries and that there are no unliquidated entries of welded outlets

by Vandewater pre-dating Commerce's October 2020 initiation of the remand

proceeding.  *Id.*  However, by explicitly engaging not only Vandewater, but also

SCI and SIGMA, about their entries in the proceeding below, the CIT confirmed

that it was considering the factual and legal disposition of all three companies'

entries.  Indeed, the CIT did not rule (though it theoretically could have) that SCI's

arguments were moot.  For these reasons, the Government's arguments on

mootness should be rejected.  However, to the extent that this Court adopts the

Government's mootness arguments, it should make clear that Commerce's

determination with respect to suspension of liquidation applies exclusively to

Vandewater's entries, and that SCI and SIGMA may pursue related arguments concerning their own entries, in their own currently stayed cases, in subsequent proceedings at the CIT and any appeals that follow.

## III.    CONCLUSION AND STATEMENT OF RELIEF REQUESTED

For the reasons set forth above, and those contained in SCI's Opening Brief, SCI respectfully requests that this Court should find that:

(1) the plain language of the AD Order's scope contains unambiguous terms that exclude welded outlets or, in the alternative,

(2) the enumerated sources of 19 C.F.R. § 351.225(k)(1) exclude welded outlets from the AD Order's scope or, in the alternative,

(3) should Commerce's Final (k)(2) Remand Redetermination be upheld, Commerce may only impose suspension of liquidation as to unliquidated entries that entered on or after October 30, 2020, and that retroactive suspension on any entries made prior to that date is unlawful or, in the alternative,

(4) the CIT should address SCI's arguments regarding the effective date for suspension of liquidation in Commerce's Final (k)(2) Remand Redetermination and rule on that issue in the first instance.

Respectfully Submitted,

/s/ Gregory S. McCue
Gregory S. McCue
Zachary Simmons

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue N.W.
Washington, DC 20036
(202) 429-6421

*Counsel to Smith-Cooper*
*International, Inc.*

Dated: July 12, 2023

## CERTIFICATE OF SERVICE

### <u>Vandewater International Inc. v. US</u>
### CAFC Court Nos. 2023-1093, 2023-1141

I hereby certify that on July 12, 2023 the foregoing document filed on behalf of Smith-Cooper International, Inc. was served upon all parties by operation of the Court's electronic filing system.


/s/ Gregory S. McCue
Gregory S. McCue

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue N.W.
Washington, DC 20036
(202) 429-6421

Date: July 12, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1093, 2023-1141

**Short Case Caption:** Vandewater International Inc. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,984 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/12/2023

Signature: /s/ Gregory S. McCue

Name: Gregory S. McCue